**James LEE, Grace Real Estate Management, and Grace Real Estate Management Corporation, Appellants,**

v.

**Eric E. PEREZ, Appellee.**

**No. 14–02–01132–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 23, 2003.

Rehearing Overruled Nov. 20, 2003.

---

Kristopher K. Ahn, Roy J. Elizondo, Houston, for appellants.

Albert Thomas Van Huff, Houston, for appellee.

Panel consists of Chief Justice SCOTT BRISTER and Justices ANDERSON and SEYMORE.

## OPINION

SCOTT BRISTER, Chief Justice.

Eric Perez leased two lots at 7411 and 7415 Long Point Road in Houston to operate a used car lot. The "Commercial Lease" he signed was for a period of three years beginning on March 1, 2000, and limited his use of the lots to the sale, financing, and insurance of autos. Two months later, a Houston city attorney sent a letter informing him he was violating a deed restriction limiting the property to residential use, and threatening a lawsuit unless he shut down his business within 15 days. Perez complied, and then sued appellants James Lee, Grace Real Estate Management, and Grace Real Estate Management Corporation for damages.

■ After a bench trial, the trial court found appellants breached the commercial lease with Perez,[1] and awarded him $17,605 in actual damages, $12,000 for trial attorney's fees, but no fees for this appeal. Although appellants requested findings of fact and conclusions of law, they never filed a notice of past due findings, and thus waived any right to receive them.[2]

### The Deed Restriction

■ Appellants contend the following deed restriction did not limit the use of these lots to residential purposes:

All lots in the Addition, except Lots One (1) through Eleven (11), both inclusive, in Block One (1), shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three cars, and other out buildings incidental to residential use of the plot. Business buildings may be constructed on said Lots One (1) through Eleven (11), both inclusive, in Block One (1), and such properties may be used only for retail business, professional offices, and service business, and no noxious or offensive trade or activity shall be carried on upon said business lots, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood. . . .

The leased lots were not among those designated for retail business.

Appellants argue this deed restriction limits the *buildings* that can be constructed but not the *activities* that can be conducted on their lots. But the provision says these lots "shall be known and described as residential lots," limits all buildings on them to residential use, and allows retail business only on lots other than those involved here. By statute, we are required to construe this restrictive covenant liberally to give effect to its purpose and intent.[3] We hold the deed restriction prohibits use of the leased property as a used car lot.

■ Alternatively, appellants contend the deed restriction has been waived as a matter of law.[4] A deed restriction may be waived when the number, nature, and severity of existing violations would cause a reasonable person to conclude the restriction had been abandoned.[5] We must also consider any prior acts of enforcement.[6]

---

1. The trial court further found appellants made a negligent misrepresentation to Perez; however, Perez elected his remedies under the contract cause of action.

2. *See* Tex.R. Civ. P. 297 (stating party requesting findings "shall" file notice of past due findings within 30 days of original request); *Chang v. Linh Nguyen*, 81 S.W.3d 314, 317 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding failure to file notice of past due findings waived any error).

3. Tex. Prop.Code § 202.003(a).

4. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) ("When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue."); *see also Oldfield v. City of Houston*, 15 S.W.3d 219, 226 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (stating party claiming waiver of deed restrictions has burden of proof).

5. *See Oldfield*, 15 S.W.3d at 226–27. We consider only evidence regarding waiver of this particular restriction rather than the restrictions in general. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 851 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

6. *See Oldfield*, 15 S.W.3d at 227.

At trial, there was some anecdotal evidence of commercial use in the area.[7] But there is no evidence that would allow a comparison of the number of non-conforming and conforming uses.[8] More important, James Lee admitted the prior tenant of 7415 Long Point left when he also received a letter from the city objecting to use of the lot for a tire business. Because there was some evidence this deed restriction had not been waived, appellants did not establish waiver as a matter of law.

### The Breach

Appellants assert there is no evidence they breached the parties' commercial lease.[9] Although the lease contains no express warranty by the landlord concerning the suitability of the property, Texas law provides an implied warranty that a commercial lease is suitable for the intended commercial purpose.[10] Here, the deed restriction discussed above rendered these lots unsuitable for the purpose designated in the parties' lease.

This implied warranty applies only to latent defects,[11] which appellants contend this was not. There was conflicting evidence whether appellants told Perez about the restriction; accordingly, we defer to the trial court's implied conclusion that they did not.

Nevertheless, appellants contend Perez is charged with constructive notice because the deed restrictions appear in the county real property records. Real property records constitute constructive notice to buyers, but the courts have not generally imposed on others a similar irrebuttable presumption of notice.[12] Were we to do so, every prospective tenant would have to obtain a title opinion. We decline appellant's invitation to extend the doctrine of constructive notice that far.

Appellants point to five other provisions of the lease they say disavow any implied warranty. First, they point to a provision indicating the tenant accepted

---

7. There was testimony Lee's wife operated a business next to the two lots here, that there was a car wash in the same block, and that the block had only one single-family residence and an apartment complex. Although not mentioned at trial, we note that commercial properties in this neighborhood have made frequent appearances in Texas jurisprudence. *See Amir v. State*, 45 S.W.3d 88, 98 (Tex.Crim. App.2001) (regarding search of office suite at 6929 Long Point); *Carroll v. State*, 701 S.W.2d 913, 915 (Tex.Crim.App.1986) (regarding obscene magazines sold at bookstore at 7637 1/2 Long Point); *Cannady v. State*, 582 S.W.2d 467, 468 (Tex.Crim.App.1979) (regarding narcotics search warrant of commercial building at 6927 Long Point); *R.R. Street & Co., Inc. v. Pilgrim Enters., Inc.*, 81 S.W.3d 276, 285 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (regarding dry-cleaning business at 7430 Long Point); *Spring Branch Sav. & Loan Ass'n v. Gerst*, 420 S.W.2d 618, 620 (Tex.Civ.App.-Austin 1967, writ ref'd n.r.e.) (regarding savings association at 8224 Long Point); *Akins v. State*, No. C14–89–00684–CR,

1990 WL 168126 (Tex.App.-Houston [14th Dist.] Nov. 1, 1990, no pet.) (not designated for publication) (regarding theft at grocery store at 8120 Long Point).

8. *See, e.g., New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666, 669 (Tex. App.-Houston [14th Dist.] 1980, no writ) (affirming finding that restriction had not been waived as evidence showed only 4 non-conforming uses among 169 lots).

9. In reviewing this issue, we utilize the usual standard of review for legal sufficiency challenges. *See Latch v. Gratty*, 107 S.W.3d 543, 545 (Tex.2003).

10. *See Davidow v. Inwood N. Prof'l Group—Phase I*, 747 S.W.2d 373, 377 (Tex.1988).

11. *Id.*

12. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex.1998).

the property "as is."[13] Such provisions may indeed waive express or implied warranties,[14] but this one did not. The "as is" clause here related to the physical condition of the property that a physical examination would reveal. The deed restriction here was not a "condition" of the premises, and would not be disclosed by an examination of the lots themselves.

██ Second, they point to a merger provision voiding any prior agreements.[15] But an implied warranty is not a prior agreement; it is part of the contract itself.[16] Moreover, the lease itself stated the lots would be used for a used car business, so no prior understanding was necessary. While Perez presented evidence about representations made before the lease was signed, the breach action on which he recovered relies solely on the lease rather than anything preceding it.

██ Third, appellants point to a provision requiring Perez to "comply with all laws, orders, and requirements of all governmental entities with reference to the use and occupancy of the leased premises." Assuming this deed restriction is a requirement of a governmental entity,[17] it is undisputed Perez *did* comply by shutting down his business. His compliance hardly excuses appellants' initial breach of the implied warranty regarding how the premises could be used.

██ Fourth, appellants point to a provision they say limits Perez's remedies to terminating the lease or making repairs for the landlord's account.[18] But the lease also provided this remedy was cumulative rather than preclusive of the tenant's other rights and remedies.[19] A cumulative remedy cannot preclude the one Perez pursued.

13. Paragraph 8 states in full:
**CONDITION OF PREMISES.** Tenant has examined and accepts the leased premises in its present as is condition as suitable for the purposes for which the same are leased, and does hereby accept the leased premises regardless of reasonable deterioration between the date of this lease and the date Tenant begins occupying the leased premises unless Landlord and Tenant agree to repairs or refurbishment as noted in Special Provisions.

14. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995).

15. Paragraph 35 states:
**PRIOR AGREEMENTS SUPERCEDED.** This agreement constitutes the sole and only agreement of the parties to this lease and superceded any prior understandings or written or oral agreements between the parties respecting the subject matter of this lease.

16. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 439 (Tex.1995).

17. *See* TEX. LOC. GOV'T CODE §§ 212.131–.137 (authorizing cities with population of more than 1.5 million to enforce deed restrictions,

and deeming such action a governmental function).

18. Paragraph 26 states:
**DEFAULT BY LANDLORD.** In the event of breach by Landlord of any covenant, warranty, term or obligation of this lease, then Landlord's failure to cure same or commence a good faith effort to cure same within 10 days after written notice thereof by Tenant shall be considered a default and shall entitle Tenant either to terminate this lease or cure the default and make the necessary repairs and any expense incurred by Tenant shall be reimbursed by the Landlord after reasonable notice of the repairs and expenses incurred.

19. Paragraph 32 states:
**RIGHTS AND REMEDIES CUMULATIVE.** The rights and remedies by this lease agreement are cumulative and the is of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

■ Finally, appellants point out the commercial lease shows only "Grace Real Estate Management" as landlord; they argue judgment against any other party was improper. But at trial, James Lee admitted he owned the lots, and deeds were introduced proving that to be so. Lee also testified he and his wife were the sole owners, officers, and directors of the corporate defendant. There was evidence the corporation's charter had been forfeited for failure to pay franchise taxes long before this lease was signed.[20] None of the appellants filed a verified denial that they had been sued in the wrong capacity.[21] In their motion for new trial, the appellants themselves alleged that "Defendants" (i.e., all of them) leased the two lots to Perez. We hold there was some evidence justifying a judgment against each of the defendants.

### Attorney's Fees

■ Finally, all parties complain of the trial court's award of attorney's fees. Perez claims $12,000 was too small, as his evidence was uncontradicted.[22] Appellants claim it was too large, as there was no proof of each of the factors relevant to a reasonable fee.[23] But no one mentions the statute that specifically governs contract actions tried to the court, which allows the trial judge to take judicial notice of the contents of the case file and usual and customary fees.[24] In this case, Perez presented expert testimony that his attorneys' fees (exceeding $21,000) were reasonable, necessary, and customary, and tendered timesheets reflecting the time and labor required, as well as a resume reflecting his attorney's skill and experience. But because of the statute, this evidence was neither necessary nor conclusive.[25] The statute gave the trial court discretion to award a reasonable fee regardless of whether either party agreed with it.

■ But the same cannot be said of the denial of all fees to Perez for the services of his attorneys in this appeal.[26] Perez presented expert testimony that $10,000 was a reasonable fee for an appeal to this court, and $5,000 for an appeal to the Texas Supreme Court. While the trial court had discretion to award a smaller or larger fee, it did not have discretion to award nothing.[27] Accordingly, we reform

20. *See* Tex. Tax Code 171.255(a) (making officers and directors personally liable for debts created by corporation after taxes in default).

21. *See Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex.1988) (holding defendant waived objection that claim belonged to corporation rather than individual by failure to file sworn denial).

22. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990) (holding award of $150 in election code suit was an abuse of discretion, as uncontradicted evidence established reasonable fee of $22,500).

23. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (quoting Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex Gov't Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)).

24. *See* Tex. Civ. Prac. & Rem. § 38.004.

25. *See Laredo Indep. School Dist. v. Trevino*, 25 S.W.3d 263, 266 (Tex.App.San Antonio 2000, pet. denied) (holding factors in *Arthur Andersen* inapplicable to contract suit tried to court); Scott A. Brister, *Proof of Attorney's Fees in Texas*, 24 St. Mary's L.J. 313, 333–34 (1993) (noting statute requires no evidence to be offered in contract suit tried to court).

26. Perez did not waive this complaint by approving the final judgment as to both form and substance. *See In re Broussard*, 112 S.W.3d 827, 832–33 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.).

27. *See Ragsdale*, 801 S.W.2d at 882 (holding trial court abused its discretion in awarding $150 for trial fees when uncontradicted evidence established reasonable fee of $22,500). A recent case by a panel of visiting judges in this court suggests the contrary. *See Anderson, Greenwood & Co. v. Martin*, 44

the trial court's judgment in accordance with the uncontested evidence to add $10,000 for the services of Perez's attorneys in this successful appeal, and $5,000 in the event appellants make an unsuccessful appeal to the Supreme Court of Texas.

The judgment of the trial court, as reformed, is affirmed.

S.W.3d 200, 221 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (holding trial court had discretion to award no appellate fees). But as the fee claimant in that case lost on its contract claim, there was no basis for recovering *any* attorney's fees—appellate or otherwise. *See* TEX. CIV. PRAC. & REM.CODE § 38.001 (providing for recovery of fees by party with *valid* contract claim). As the panel did not distinguish (or even mention) *Ragsdale*, and was addressing a question rendered moot by its dismissal of the contract claim, we instead follow the holding of the higher court.